IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TAMOIYA N. TAYLOR,            §
*on behalf of son, I.C.T.,*     §
    **Plaintiff,**        §
              §
**v.**                       §   No. 3:11-CV-01015-K (BF)
              §
**COMMISSIONER OF THE**      §
**SOCIAL SECURITY ADMINISTRATION,** §
    **Defendant.**        §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Tamoiya N. Taylor ("Plaintiff"), on behalf of her son I.C.T., for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief (doc. 16), filed on August 15, 2011, and Defendant's Brief (doc. 17), filed on September 9, 2011. The Court also reviewed the record in connection with the pleadings. For the following reasons, the Court recommends that the final decision of the Commissioner be **AFFIRMED**.

### Background[1]

**Procedural History**

Plaintiff filed an application, on behalf of her son I.C.T., for Title XVI benefits on January 7, 2009, alleging disability due to Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"). (Tr. 117-24, 145.) This application was initially denied by the

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr".

Commissioner, and again upon reconsideration. (Tr. 47-52, 156-59.) Plaintiff requested a hearing, which was held on May 12, 2010 in front of an Administrative Law Judge ("ALJ"). (Tr. 32-44, 60-63.) At the hearing, Plaintiff and I.C.T. testified. (Tr. 32-44.) The ALJ issued an unfavorable decision on May 26, 2010, denying Plaintiff's application for disability. (Tr. 11-31.) Plaintiff filed a timely request with the Appeals Council to review the ALJ's decision. (Tr. 113-16.) The Appeals Council declined Plaintiff's request for review on August 17, 2010. (Tr. 6-10). Thus, the ALJ's decision became the final decision of the Commissioner, from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

**Plaintiff's Age, Education, and Work Experience**

Plaintiff's son, I.C.T., was born on January 30, 2002. (Tr. 17.) He was a preschooler on the date his application was filed, and is currently a school-age child (child age 6 to the attainment of age 12). 20 C.F.R. § 416.926a(g)(2). I.C.T. has not engaged in substantial work activity. (Tr. 17.)

**Plaintiff's Medical Evidence**

Plaintiff sought treatment for her son, I.C.T., from Dallas Metrocare Services ("Metrocare"). (Tr. 191-215, 285-309.) I.C.T.'s first visit to Metrocare was on December 17, 2008. (Tr. 208.) Plaintiff reported I.C.T. having behavioral problems at school, such as being hyper, having fits of anger, and defecating in his pants because he was so nervous. (*Id.*) Plaintiff reported that I.C.T. received counseling through the Freedom House in Weatherford, Texas from June 2008 through July 2008. (*Id.*) Plaintiff stated that I.C.T. showed improvement until he returned to school. (*Id.*) Clinicians noted that I.C.T. had no prior hospitalizations and no current suicidal thoughts. (*Id.*) I.C.T. was diagnosed with Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder, and Asthma.

(*Id.*) I.C.T. was assigned a Global Assessment of Functioning ("GAF") score of 40.[2] I.C.T. was prescribed Concerta by the doctor.

Plaintiff and I.C.T. returned to Metrocare on December 31, 2008. (Tr. 201.) Clinicians noted that I.C.T. was still hyper and inattentive, and that he climbs on furniture and jumps off. (Tr. 202.) The clinician also noted that I.C.T. was excited, yet when asked to stand still, I.C.T. complied the second time. (Tr. 206.) The doctor increased I.C.T.'s dosage of Concerta. (Tr. 203.)

On January 6, 2009, progress notes indicated that Plaintiff believed the medication was helping I.C.T. behave better. (Tr. 200.) The clinician also noted that I.C.T. was able to focus, listen, and obey all commands with little redirection during the session. (*Id.*) Further, I.C.T. identified three feeling words and gave examples. (*Id.*) On January 22, 2009, Plaintiff and I.C.T. again presented to Metrocare. (Tr. 193.) Plaintiff told the clinician that I.C.T.'s teachers told her that I.C.T.'s behavior and ability to pay attention have improved since he started taking his medication. (Tr. 194.) The clinician noted that I.C.T. has problems using positive social skills to interact with his brother and others. (*Id.*) Regarding I.C.T.'s progress assessment, the clinician noted that I.C.T. has made good progress. (*Id.*) On January 29, 2009, Plaintiff told the clinician that I.C.T. was hitting things around the house and not doing what he was told. (Tr. 193.) The clinician noted that I.C.T.'s academic performance had improved with the medication and that I.C.T. participated well and demonstrated a way to cope with his anger at school. (*Id.*)

---

[2] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *See id.*

Subsequently, in February 2009, Plaintiff took I.C.T. to Pecan Valley Mental Health Mental Retardation ("MHMR") for treatment. (Tr. 234-42.) I.C.T.'s daily activities were all described as normal except for his energy/activity level which was increased. (Tr. 242.) The evaluator noted that I.C.T. could read out loud and that he played sports outside. (*Id.*) It was also noted that the highest grade I.C.T. completed was kindergarten and he was not in special education classes. (Tr. 240.)

On July 1, 2009, I.C.T. was diagnosed with ADD/Hyper, Disruptive Behavior, and Mood Disorder. (Tr. 243.) He was assigned a GAF scored of 45.[3] (*Id.*) Notes indicated that Plaintiff told the doctor that Concerta "has been of significant benefit." (Tr. 265.) Plaintiff stated that I.C.T.'s concentration has been better since he started taking Concerta and he is better able to complete tasks. (*Id.*) However, Plaintiff also stated that I.C.T. still has some difficulties staying on task and completing tasks. (*Id.*) Plaintiff also told the doctor that I.C.T.'s hyperactivity has improved with Concerta, but he still has some issues with being hyperactive. (*Id.*) Furthermore, Plaintiff stated that I.C.T used to have trouble staying in his seat in school, but not since he has been taking Concerta. (*Id.*) Additionally, Plaintiff stated that I.C.T.'s anger issues and physical aggression have improved with Concerta. (*Id.*) Plaintiff told the doctor that I.C.T. has been sad, he tends to blame others, he likes to annoy others, and he has problems with following the requests of adults. (Tr. 266.) Plaintiff indicated to the doctor that I.C.T. has had no motor or language development delays, and he has never repeated a grade. (Tr. 267.) The doctor noted that I.C.T. was alert, cooperative, exhibited an increased level of psychomotor activity, had a pleasant mood, appropriate affect, and logical thought patterns.

---

[3] A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM).

4

*(Id.)* It was noted that I.C.T. has not had any past psychiatric hospitalizations or evidence of psychosis. *(Id.)*

Throughout I.C.T.'s treatment at MHMR, he was typically noted with an overall functioning score of an eight, on a scale of zero to ten. (Tr. 228-84.) Additionally, I.C.T.'s core symptoms seldom rated above a five, on a scale of zero to ten, with a zero equal to no symptoms, a five equal to moderate symptoms, and a ten equal to extreme symptoms. *(Id.)* I.C.T. was discharged from MHMR on December 16, 2009 because his family moved. The evaluator noted that I.C.T.'s behavior had improved with their services, however, his GAF score remained at 45. (Tr. 245.)

Plaintiff and I.C.T. returned to Metrocare for treatment in January 2010. Plaintiff reported that I.C.T.'s behavior was aggressive, he wouldn't stay still, he was flipping on the couch and karate-jumping, and he had to be told constantly to stay on task. (Tr. 291.) The nurse noted that I.C.T. was adequately groomed, cooperative, hyperactive, had normal speech, no psychotic features, no delusions, pleasant mood, intact memory, impaired attention and concentration, and poor insight, judgment and impulse control. (Tr. 292-93.) The nurse indicated that I.C.T. had moderate limitations in his school behavior and mild limitations in the psychoactive medication treatment. (Tr. 296.) I.C.T. was assigned a GAF score of 42.[4]

On April 15, 2010, Plaintiff and I.C.T. returned to Metrocare. Plaintiff reported that I.C.T. had run out of his medication. (Tr. 299.) Plaintiff also reported that I.C.T. "does well with his meds." *(Id.)* There were no changes from the last visit, except the nurse noted that I.C.T.'s insight and judgment

---

[4] A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM).

were fair instead of poor, and instead of being hyperactive, his psychomotor appearance was normal. (Tr. 300.)

At the request of the Commissioner, a Childhood Disability Evaluation Form was completed by Dr. Robert Gilliland on February 20, 2009. (Tr. 216-21.) Dr. Gilliland opined that I.C.T.'s impairment or combination of impairments was severe, but did not meet, medically equal, or functionally equal the listings. (Tr. 216.) The doctor noted I.C.T.'s impairments as ADHD and ODD. (*Id.*) There are six functional equivalence domains to determine whether an impairment or combination of impairments functionally equals the listings. Dr. Gilliland found that I.C.T. had no limitation in acquiring and using information, moving about and manipulating objects, and health and physical well-being; a less than marked limitation in interacting and relating with others and caring for yourself; and a marked limitation in attending and completing tasks. (Tr. 218-19.) Dr. Gilliland noted that Plaintiff's alleged limitations of I.C.T. were not wholly supported by the record. (Tr. 221.)

Also at the request of the Commissioner, a Childhood Disability Evaluation Form was completed by Dr. Leela Reddy on May 14, 2009. (Tr. 222-27.) Dr. Reddy opined that I.C.T.'s impairment or combination of impairments was severe, but did not meet, medically equal, or functionally equal the listings. (Tr. 222.) The doctor noted I.C.T.'s impairments as ADHD and ODD. (*Id.*) She also evaluated the six functional equivalence domains to determine whether an impairment or combination of impairments functionally equals the listings. Dr. Reddy found that I.C.T. had no limitation in acquiring and using information, moving about and manipulating objects, and health and physical well-being; a less than marked limitation in interacting and relating with others and caring for yourself; and a marked limitation in attending and completing tasks. (Tr. 2224-25.) Dr. Reddy noted that I.C.T.'s alleged limitations were partially supported by the record. (Tr. 227.)

6

**Plaintiff's Testimony at the Hearing**

Plaintiff testified on behalf of her son, I.C.T., at the hearing held on May 12, 2010. (Tr. 32-44.) Plaintiff testified that I.C.T. is eight years old and in the second grade. (Tr. 36.) She stated that I.C.T. makes A's, B's, and C's in school. (*Id.*) Plaintiff testified that I.C.T. is doing pretty well in school and that he reads well for his age. (*Id.*) She also stated that I.C.T. gets along with the other students as long as he is taking his medication. (Tr. 37.) Plaintiff stated that I.C.T. takes his medication every day, and that there were only two occasions where he did not take his medicine. (*Id.*) Plaintiff stated that the teacher called on both of those days because I.C.T. was acting out of control. (*Id.*) Plaintiff testified that the medication makes a big difference for I.C.T. (*Id.*) Plaintiff told the ALJ that I.C.T. eats well and sleeps well, so long as he takes his sleep medication, Clonodin. (Tr. 38.) Plaintiff testified that I.C.T. takes Risperidone, Concerta, Clonodin, and asthma medicine. (Tr. 38-39.) Plaintiff said that she first noticed I.C.T.'s ADHD problem in kindergarten. (Tr. 39.)

Plaintiff testified that she let I.C.T. go through kindergarten without taking any medication, but once he got to first grade she put him on medicine. (Tr. 39-40.) Plaintiff stated that I.C.T.'s first grade teacher, Ms. Morris, told Plaintiff that once I.C.T. was put on medication he did a complete turnaround. (Tr. 40.) Ms. Morris told Plaintiff that I.C.T. was calm and he could study and do work. (*Id.*) Plaintiff testified that I.C.T. does his homework as long as he is taking his medicine. (*Id.*) She also stated that I.C.T. helps out around the house with chores, such as cleaning and doing the dishes. (Tr. 40-41.) Regarding I.C.T.'s ODD, Plaintiff stated that without medication, I.C.T. would defecate on the floor and act out by not doing what he was told and breaking things. (Tr. 42.) She stated that I.C.T. is now doing okay and is better with his medication. (*Id.*) Plaintiff stated that I.C.T.'s favorite

hobby is to sing. (*Id.*) I.C.T. stated that he likes to sing and play. (*Id.*) Plaintiff testified that overall I.C.T. is doing better with medicine and he is calm. (Tr. 43.)

**The Decision**

The ALJ analyzed Plaintiff's claim pursuant to the three-step sequential evaluation process utilized to determine whether a person under the age of eighteen is disabled.[5] At step one, the ALJ determined that I.C.T. had not engaged in substantial gainful activity since his application date of January 7, 2009. (Tr. 17.) At step two, the ALJ found that the medical evidence established that I.C.T. had the following severe impairments: ADHD and ODD. (*Id.*) Finally, at step three, the ALJ determined that I.C.T. did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Additionally, he found that I.C.T. did not have an impairment or combination of impairments that functionally equals the listings. (Tr. 18.) In making this determination, the ALJ found that I.C.T. did not have two "marked" limitations or one "extreme" limitation in any area of functioning. (Tr. 18-27.) Thus, the ALJ concluded that I.C.T. was not disabled under the Act for the relevant time period. (Tr. 27.)

## Standard of Review

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). Under the Social Security Act, a child under the age of eighteen years is considered disabled if he has a medically determinable impairment "which results in marked

---

[5] (1) Is the claimant currently working? (2) Does he have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1, or functionally equal the listings? 20 C.F.R. § 416.924(a).

and severe functional limitations" and which can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner utilizes a sequential three-step inquiry to determine whether a claimant under the age of eighteen years is disabled.  Those steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found to be disabled.

3.  An individual who "meets, equals, or functionally equals a listed impairment in Appendix 1" of the regulations will be considered disabled.

20 C.F.R. § 416.924(a). To establish that an impairment functionally equals an impairment in the listing, the impairment or combination of impairments must result in marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.924(a). The burden lies with the claimant to prove his disability. 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Issue

**Whether the ALJ's Decision is Supported by Substantial Evidence**

### Analysis

**New Evidence Submitted by Plaintiff**

Plaintiff first contends that she has new evidence which demonstrates that I.C.T. is disabled under the Act. (Pl.'s Br. at 3-7.) Plaintiff states that she has new evidence which consists of written statements from two of I.C.T.'s third-grade teachers, Ms. Houston and Mrs. Santana, and a written statement from I.C.T.'s MHMR counselor, Mrs. Michelle Edwards. (*Id.* at 3.) According to Plaintiff, these statements attest to I.C.T.'s limitations and behavior when I.C.T. is off his medication. (*Id.*) Plaintiff further states that she has additional evidence of I.C.T.'s disability because she has a letter which demonstrates that her other son, John A. Taylor, is receiving SSI benefits. (*Id.*) Plaintiff claims to have this new evidence, yet the only document included with her brief was a letter from the Commissioner demonstrating that her other son, John, receives SSI benefits. (*See* Pl.'s Br. at 1-9.) Plaintiff failed to provide the written statements of Ms. Houston, Mrs. Santana, or Mrs. Edwards to this Court, and these statements are not contained in the administrative record.

If new evidence is submitted by a plaintiff, the court may remand the case so long as the evidence is (1) new, (2) material, and (3) good cause has been shown for why the evidence wasn't submitted into the record in prior proceedings. *Bradley v. Bowen,* 809 F.2d 1054, 1057-58 (5th Cir. 1987) (citing *Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir.1983)). When interpreting whether the new evidence is material, the Fifth Circuit has held that in order to remand a case, there must be a reasonable possibility that the new evidence would have changed the outcome of the determination. *Bradley,* 809 F.2d at 1058 (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981)).

10

Additionally, "[i]mplicit in the materiality requirement . . . 'is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir.1985) (quoting *Szubak v. Secretary of Health & Human Serv.*, 745 F.2d 831, 833 (3d Cir.1984)).

Here, Plaintiff has failed to provide the written statements of the two third-grade teachers and the MHMR counselor, and thus, this Court is unable to determine whether those statements would be material. Nevertheless, it would appear that the statements of the two third-grade teachers would not be material, as I.C.T. was in the second grade at the time of the ALJ's decision, therefore the third-grade teachers' statements would pertain to I.C.T.'s condition after the time period for which disability benefits were sought. *See Johnson,* 767 F.2d at 183. Moreover, Plaintiff provides no explanation for why these three statements were not made a part of the record in any of the prior proceedings. Hence, the Court is unable to say with certainty whether good cause exists to remand the case.

Additionally, the document that Plaintiff did submit regarding her other son's receipt of disability benefits is not material to I.C.T.'s receipt of disability benefits. The Court cannot surmise, and Plaintiff has failed to provide, any logical reason why I.C.T. should be considered disabled because his brother, John, was found to be disabled. The Court concludes that there is no reasonable possibility that the submission of John's letter demonstrating his receipt of disability would change the outcome of I.C.T.'s determination of disability.

In sum, the Court finds that the new evidence is not material and thus does not justify remand.

**Credibility of Ms. Morris and Plaintiff**

In essence, Plaintiff argues that the weight the ALJ gave to Ms. Morris' opinion evidence was inaccurate because I.C.T. "was in fact afraid to act out his severe and marked functional limitations, the way he does now, two years settled into his school environment." (Pl.'s Br. at 5.) It also appears that Plaintiff believes her testimony should have been given more consideration. (*Id.*)

Ms. Morris was I.C.T.'s first grade teacher and she completed a School Activity Report ("Report"). (Tr. 152-53.) In that Report, Ms. Morris noted that I.C.T. was not in special education classes; he performed the full first grade curriculum; he was functioning at grade level; he seemed hyperactive; he had no speech problems; his intelligibility was 100%; and although his behavior was irrational, overactive, and unpredictable, his behavior had been improving as he responded well to a structured environment. (*Id.*) The ALJ properly considered this Report as opinion evidence pursuant to the Social Security Regulations. *See* Social Security Ruling 06-03p, 2006 WL 2329939 (S.S.A.). In his findings, the ALJ noted that Ms. Morris' statements were based on her observations and interactions with I.C.T. as his teacher, and thus accorded her statements great weight. (Tr. 22.) Furthermore, the ALJ also noted that Ms. Morris' statements were consistent with the records from Metrocare which indicated that I.C.T.'s teachers had reported improvement in his behavior and ability to pay attention in class since he started taking medication. (*Id.*) The Court finds that the ALJ properly weighed the opinion evidence of Ms. Morris.

Moreover, Plaintiff's argument for why the ALJ should not have given so much consideration to Ms. Morris' statements is unintelligible. This Court is unaware of any situation wherein an individual is afraid to act out their severe and marked functional limitations, but is later found disabled. Plaintiff fails to cite to any case law to support her position. It also appears that Plaintiff

12

makes the argument that at the current time, two years later, I.C.T. is acting out again because of his ADHD and ODD and should be found disabled. However, this Court is unable to consider evidence which relates to the time period after the ALJ's decision denying benefits. *See Johnson*, 767 F.2d at 183 (holding that a court cannot consider new evidence of a subsequent deterioration of the prior non-disabling condition).

Plaintiff testified that I.C.T. has ADHD and ODD, and thus he should be found disabled. (Tr. 36.) The ALJ noted in his findings that he gave that testimony very little consideration because the limitations Plaintiff testified to were not supported by the objective medical evidence in the record. (Tr. 21.) Subjective complaints must be corroborated by objective medical evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Nonetheless, the ALJ stated that the medical evidence did support Plaintiff's testimony regarding I.C.T.'s behavior improving with his medication. (Tr. 22.) Plaintiff testified that after I.C.T. began taking his medication, he became calmer and quieter. She testified that he does his homework and chores, and that overall he is doing better. This testimony is corroborated by Ms. Morris' statement that I.C.T.'s behavior and ability to concentrate began improving with his medication. Metrocare records further confirm this testimony. Progress notes indicate that I.C.T.'s behavior has improved with medication, and Plaintiff's statements in the clinician's notes report I.C.T. does well with his medication. An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988). The Court finds that the ALJ properly considered Plaintiff's testimony pursuant to SSR 06-03p.

**Listings 112.08 and 112.11**

Plaintiff contends that I.C.T.'s functional impairments meet or medically equal the criteria for Listings 112.08 (ODD) and 112.11 (ADHD) (collectively referred to as the "Listings"). (Pl.'s Br. at 6.) In order for a claimant to meet or medically equal the Listings, the requirements in both Parts A and B must be met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00. The paragraph A criteria for the Listings is a set of medical findings, and the paragraph B criteria is a set of impairment-related functional impairments. *Id.*

To satisfy the criteria of Part A of Listing 112.08, a claimant must manifest deeply ingrained, maladaptive patterns of behavior, associated with one of the following: (1) seclusiveness or autistic thinking; (2) pathologically inappropriate suspiciousness or hostility; (3) oddities of thought, perception, speech, and behavior; (4) persistent disturbances of mood or affect; (5) pathological dependence, passivity, or aggressiveness; (6) intense and unstable interpersonal relationships and impulsive and exploitative behavior; or (7) pathological perfectionism and inflexibility. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.08. To satisfy the requirements of Part A of Listing 112.11, a claimant must produce medically documented findings of all three of the following: (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11. To meet or medically equal the criteria for paragraph B of the Listings, children aged three to the attainment of age eighteen, must meet at least two of the appropriate age-group criteria in paragraph B2 of Listing 112.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.08, 112.11. The age-appropriate criteria in Listing 112.02(B)(2) requires at least two of the following: (1) marked impairment in age-appropriate cognitive/communication function; (2) marked impairment in age-appropriate social functioning; (3) marked impairment in age-appropriate personal functioning; or (4)

14

marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P,
App. 1, § 112.02(B)(2).

Here, the ALJ found that I.C.T. did not meet or medically equal the Listings because the
paragraph A criteria was not satisfied, and neither was the paragraph B criteria. (Tr. 17-18.)
Regarding the paragraph A criteria, the ALJ explained that I.C.T. had not been diagnosed with all of
the necessary elements to meet the requirements. (Tr. 18.) For Listing 112.08, none of the medical
records indicate that I.C.T. has deeply ingrained, maladaptive patterns of behavior associated with
any of the listed characteristics in the Listing. Furthermore, a "marked" degree of limitation is defined
as more than moderate but less than extreme, and it must seriously interfere with the claimant's ability
to function. 20 C.F.R. Pt. 404, Subpt. P, § 112.00. The medical evidence in the record indicates that
I.C.T.'s ADHD and ODD conditions were moderate in severity, and not "marked" limitations as
required in Listing 112.11. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11. The Metrocare records
are replete with clinician's notes that I.C.T.'s behavior has improved with medication. An impairment
that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of
disability. *See Bowen,* 864 F.2d at 348. Additionally, in January 2010, the nurse at Metrocare noted
that I.C.T. had moderate limitations in his school behavior. Records from MHMR indicate that I.C.T.
was given an overall functioning score of an eight, on a scale of zero to ten. Furthermore, throughout
the course of treatment at MHMR, I.C.T.'s core symptoms were rarely rated above a five, on a scale
of zero to ten, with a zero equaling no symptoms, a five equaling moderate symptoms, and a ten
equaling extreme symptoms. The medical evidence does not meet or equal Part A of either of the
Listings.

Regarding the paragraph B criteria for the Listings, the ALJ found that I.C.T. had no limitation in the cognitive/communicative function or in personal functioning, he had a less than marked impairment in social functioning, and a marked impairment in maintaining concentration, persistence, or pace. (Tr. 18). In order to meet Part B of the Listings, I.C.T. must have been found to have marked impairments in two of the four categories. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.08, 112.11, 112.02(B)(2). In assessing the cognitive/communicative function, the ALJ utilized the Function Report - Child Age 6 to 12th Birthday ("Function Report"), which was completed by Plaintiff. (Tr. 18.) In the Function Report, Plaintiff indicated that I.C.T.'s ability to communicate was not limited, he could read and understand simple sentences and stories in books or magazines, he could spell most three to four letter words, write a simple story, and tell time. (Tr. 131-40.) Additionally, Ms. Morris reported that I.C.T. was functioning at his grade level.

Regarding social functioning, the ALJ found that I.C.T had a less than marked limitation. (Tr. 18.) I.C.T. was noted to exhibit aggressive behavior at times, however, Plaintiff indicated in the Function Report that he had friends his own age, he made new friends, he got along with adults, he played team sports, but sometimes he did not get along with his school teachers. (Tr. 131-40.)

The ALJ found that I.C.T. had no limitation in his personal functioning because Plaintiff indicated in the Function Report that he was completely able to care for his personal needs. (Tr. 138.) Plaintiff also testified that I.C.T. was able to brush his teeth and get dressed on his own, so long as he had taken his medication.

The only category where the ALJ found marked limitations was I.C.T.'s ability to maintain concentration, persistence, or pace. (Tr. 18.) Plaintiff reported that I.C.T.'s ability to pay attention and to stick with a task or complete a task was limited. She also testified that I.C.T. was making A's, B's,

16

and C's in school and that he reads well for his age. Ms. Morris reported that I.C.T. was hyperactive and even seemed nervous when he first arrived in her class.

The Court finds that the ALJ properly analyzed the paragraph B criteria in finding that I.C.T. only had a marked limitation in one of the four categories. Thus, I.C.T. did not satisfy Part B for the Listings. Accordingly, the ALJ's finding that I.C.T.'s severe impairments of ADHD and ODD did not meet or equal the Listings is supported by substantial evidence.

Although Plaintiff does not raise this issue in her brief, the Court will address whether I.C.T.'s impairments or combination of impairments functionally equals the Listings, as this is the last part of the Step 3 analysis for a finding of disability for children. In order to determine whether an impairment or combination of impairments functionally equals the Listings, there are six broad functional equivalence domains that the ALJ must examine. 20 C.F.R. § 416.926a(b). Those domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.*

Acquiring and Using Information

This domain considers how well a child acquires or learns information, and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). The ALJ found that I.C.T. had no limitation in this domain. (Tr. 22-23.) Again, the ALJ noted that in the Function Report completed by Plaintiff, she indicated that I.C.T. could read and understand simple sentences and stories in books and magazines, he could spell most three to four letter words, write a simple story, tell time, and he knows the days and months of the year. Plaintiff also testified that I.C.T. could read well for his age and that

17

he was making A's, B's, and C's in school. Ms. Morris reported that I.C.T. was performing at his grade level.

Attending and Completing Tasks

This domain concerns how well the child focuses and maintains attention; begins, carries through, and finishes activities, and the pace that those activities are performed; and the ease with which the child changes activities. 20 C.F.R. § 416.926a(h). The ALJ found that I.C.T. had "marked" limitation in this domain. (Tr. 23-24.) He explained that Plaintiff had reported to doctors, and indicated in the Function Report, that I.C.T.'s ability to pay attention and to stay on task and complete a task was limited. Also, clinicians at Metrocare noted that I.C.T. was hyper and inattentive. Ms. Morris reported I.C.T. was hyperactive, and even nervous, when he first arrived in her class.

However, the Court notes that the entire record is replete with evidence that I.C.T.'s behavior and functioning improved greatly with medication. The medical evidence from Metrocare and MHMR indicate that I.C.T. made good progress and he behaved better with the medication. Plaintiff reported to doctors, and testified at the hearing, that the medication significantly helped I.C.T. and that he was able to get along with other students, do his homework, study and work at school, and do his chores at home when he took his medication. Plaintiff testified that I.C.T. took his medication every day, and that there were only two days wherein he didn't take his medicine. His teacher noticed a difference in I.C.T. those two days, and Plaintiff indicated that the medicine makes a big difference for I.C.T. Plaintiff also testified that Ms. Morris told Plaintiff that I.C.T. did a complete turnaround once he started taking his medication. Ms. Morris also indicated in her School Activity Report that I.C.T.'s behavior had improved and he was responding well to a structured environment. As stated

18

previously, an impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See Bowen,* 864 F.2d at 348.

<u>Interacting and Relating with Others</u>

This domain considers how well a child initiates and sustains emotional connections with others, develops and uses the community's language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). The ALJ found that I.C.T. had a less than marked limitation in this domain. (Tr. 24-25.) In support of his finding, the ALJ explained that notations indicated that I.C.T. had exhibited aggressive behavior at times, and that he was diagnosed with ODD. Nonetheless, Plaintiff indicated on the Function Report that I.C.T. had friends his own age, he was able to make new friends, he got along well with adults, and he played team sports. She did report that he sometimes did not get along with teachers. Plaintiff also testified that I.C.T. got along well with the other students at school while he was taking his medication.

<u>Moving About and Manipulating Objects</u>

This domain concerns how well a child is able to move his body from one place to another and how a child moves and manipulates objects. 20 C.F.R. § 416.926a(j). The ALJ determined that I.C.T. had no limitation in this domain. (Tr. 25-26.) The ALJ explained that Plaintiff reported in the Function Report that I.C.T. had no limitations regarding his physical abilities, he had no trouble hearing, and no trouble seeing. (Tr. 132, 136.) Further, Plaintiff and I.C.T. testified that I.C.T. likes to sing and play.

Caring for Yourself

This domains considers how well a child maintains a healthy emotional and physical state, including appropriately seeking and maintaining physical and emotional wants and needs; coping with stress and environmental changes, and caring for his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The ALJ found that I.C.T. has a less than marked limitation in this domain. (Tr. 26-27.) In support of his finding, the ALJ noted that Plaintiff indicated in the Function Report that I.C.T. was able to care for his personal needs. She also testified at the hearing that I.C.T. could brush his own teeth and dress himself, so long as he was taking his medication.

Health and Physical Well-Being

This domain considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's functioning that were not considered in the moving about and manipulating objects domain. 20 C.F.R. § 416.926a(l). The ALJ determined that I.C.T. had a less than marked limitation in this domain. (Tr. 27.) Plaintiff reported in the Function Report that I.C.T. did not have problems hearing or seeing. Plaintiff testified that I.C.T. did have some problems sleeping, but he was prescribed medication which helps him sleep. Plaintiff also testified that I.C.T. eats well. Further, she testified that I.C.T. has asthma, but he takes medicine to control this condition. Plaintiff also stated that I.C.T. is able to go outside and run and play.

The Court finds that the ALJ's analysis of these six functional equivalence domains is supported by substantial evidence. The medical records and opinion evidence are consistent with the ALJ's findings. Furthermore, the ALJ's findings are consistent with those state agency medical consultants who completed Childhood Disability Evaluation Forms for I.C.T. *(See* Tr. 216-27.) Dr. Gilliland completed a Childhood Disability Evaluation Form on February 20, 2009. (Tr. 216-21.) His

evaluation of the six domains coincided with the ALJ's evaluation, except Dr. Gilliland found that I.C.T. had no limitation in his physical and well-being, whereas the ALJ found that I.C.T. had a less than marked limitation. (*See* Tr. 218-19.) Hence, the ALJ actually found that I.C.T. had more of a limitation than what Dr. Gilliland found. Similarly, Dr. Reddy completed a Childhood Disability Evaluation Form on May 14, 2009. (Tr. 222-27.) Her findings in the six domains coincided with the ALJ's findings, except she also found I.C.T. to have no limitation in the health and physical well-being domain. (*See* Tr. 224-25.)

Because I.C.T. was not found to have an impairment or combination of impairments that resulted in either "marked" limitations in two domains or an "extreme" limitation in one domain, his impairments do not functional equal the Listings. Moreover, the Court finds that substantial evidence supports the ALJ's determination that I.C.T.'s impairments or combination of impairments do not meet, medically equal, or functionally equal the Listings.[6]

### Recommendation

For the foregoing reasons, the Court recommends that the District Court **AFFIRM** the final decision of the Commissioner, as it is supported by substantial evidence, and dismiss Plaintiff's Complaint with prejudice.

SO RECOMMENDED, June 8, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court notes that Dr. Gilliland and Dr. Reddy both found that I.C.T.'s impairments or combination of impairments did not meet, medically equal, or functionally equal the Listings. (*See* Tr. 216, 222.)

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).